UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH BADY, | Civil No. 06-2254 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| OFFICERS ANN MURPHY-KJOS,<br>JERRY JOHNSON,<br>PATRICIA NELSON,<br>PETER HAFSTAD, PETER STANTON,[1]<br>SGT. CHARLES PETER, FIRE<br>DEPARTMENT CAPT. RITA JURAN,<br>in their individual capacities, and<br>JOHN/JANE 1-5 DOES, | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Jill Clark, **JILL CLARK, PA**, 2005 Aquila Avenue North, Golden Valley, MN 55427, for plaintiff.

C. Lynne Fundingsland and Sara J. Lathrop, Assistant City Attorneys, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402-2453, for defendants.

Plaintiff Kenneth Bady brought this action under 42 U.S.C. § 1983, alleging that defendants used excessive force against him by force-feeding him from a glucose tube, striking, kneeing, and taking him down, and tasing him multiple times after he had been

---

[1] Plaintiff's amended complaint does not include officer Peter Stanton as a named defendant in the caption. However, the parties stipulated [Docket No. 10] to the addition of defendant Stanton, and the Magistrate Judge granted plaintiff's request to file an amended complaint adding Stanton as a named defendant in this action [Docket No. 11]. The Clerk of Court is therefore respectfully directed to add officer Peter Stanton as a defendant sued in his individual capacity.

handcuffed.  Bady also alleges that defendants violated his substantive due process rights and committed a battery under Minnesota law.  This case is now before the Court on defendants' motion for summary judgment.  For the reasons stated below, the Court grants in part and denies in part defendants' motion.

## BACKGROUND[2]

Plaintiff Kenneth Bady went to his friend Billie Walton's house between 6:30 and 7:00 p.m. on the evening of February 24, 2006.  Also present at the house were Walton's wife, Sheila Perrell, Perrell's son, and Robert Thames.  Bady suffers from diabetes, and it is undisputed that he had not taken his diabetes medication that day.  Bady did not eat anything while at Walton's house, although he did consumer part of an alcoholic beverage.  At approximately 10:22 p.m., Bady started sweating profusely.  He experienced chest pain and was having difficulty breathing.  Perrell asked Bady whether he had taken his diabetes medication that day.  Bady replied that he had not.  Perrell gave Bady a piece of candy, and a short time later Bady lost his balance and "kind of passed out."

Perrell called 911.  Perrell told the 911 dispatcher that Bady may have been having a heart attack, that Bady was experiencing pain in his neck and having difficulty breathing, and that he was diabetic.  Bady then went out to the front porch to get some fresh air.  Around this time, firefighters from the Minneapolis Fire Department arrived on

---

[2] For purposes of this summary judgment motion, the Court views the facts and evidence in a light most favorable to Bady, the non-moving party.

the scene. Defendant Rita Juran, a captain of the Minneapolis Fire Department, had received a "heart" call dispatching her and other first responders to 1711 Sheridan Avenue in Minneapolis, Walton's home address. When Juran arrived on the scene, she encountered Bady on the front porch of Walton's house. Juran approached Bady and asked how he was feeling, but Bady did not respond. Juran noticed that Bady was stumbling, and she and another firefighter helped Bady back into the house and onto a couch.

Juran encountered three people inside Walton's house. Juran was told that Bady was diabetic, that he had not taken his diabetes medication that day, and that he had not checked his blood sugar. According to Juran, she was not told that Bady was having a heart attack or that he was having difficulty breathing. Bady was non-responsive to Juran's questions. Based on her observations, Juran was concerned that Bady might be having a diabetic emergency. Juran directed a fellow firefighter to hand Bady a tube of glucose so that Bady could administer the glucose and regulate his blood sugar concentration.

According to Bady, several unidentified firefighters held him down on the couch and force-fed the glucose to him, so that he was unable to breathe. Bady's eyes were closed throughout the encounter with the firefighters, so that he was later unable to visually identify the firefighters who allegedly force-fed the glucose. Juran denies that any of the firefighters attempted to force-feed the glucose to Bady. Juran testified in deposition that she asked Bady to squeeze the glucose into his mouth, and that Bady tasted the glucose and threw the tube to the ground. According to Juran, she handed the

tube back to Bady and asked him to try the glucose a second time, but Bady threw it to the ground again.

Bady jumped up from the couch and said, "I need some air." Juran placed her hands on Bady's shoulders, told him everything was okay, and asked him to sit down. According to Juran, Bady then pushed through the group of firefighters on his way out of the house, knocking the glasses off the face of one of the firefighters. Bady stated that he does not recall whether he "pushed up" against any of the firefighters as he walked toward the door.

Based on Bady's conduct and disoriented demeanor, Juran radioed for police backup to assist with a "combative" client. Bady alleges that he was not combative during this time. According to Juran, she requested police backup because she needed to assess Bady's medical condition and the firefighters and personnel on the scene were not trained to contain a non-cooperative client.

After calling for police assistance, Juran walked to the front of the house and went outside. Bady was walking on the sidewalk in front of Walton's house. According to Perrell, Bady was strolling slowly and appeared to be weak. No one was running or arguing in front of the house. Moments later, Minneapolis police officers arrived at the scene. Robert Thames stated that six to eight squad cars arrived simultaneously in front of Walton's house, with most of the cars containing two police officers. According to Thames, the officers immediately asked firefighters to identify Bady. Several officers then came up from behind Bady and grabbed him, wrapping their arms around Bady's shoulders and essentially jumping on him.

The officers kneed Bady in the leg.  One officer was "smashing [plaintiff] in the face with a closed fist." (Thames Aff. ¶ 15.)  Bady alleges that the officers then took him down to the ground.  According to Thames, who observed the incident, two male police officers kneed Bady, one male officer placed his foot on Bady's neck, and another male officer punched Bady with a closed fist.  Thames stated that the officers then handcuffed Bady.  After Bady was handcuffed and on the ground, officers tased Bady four times.  Bady was convulsing on the ground.  Around this same time, Perrell came out of Walton's house and observed Bady handcuffed on the ground.  Perrell observed the officers tasing Bady despite the fact that Bady was already in handcuffs.  Thames stated that Bady "did nothing to deserve how they were treating him."  (Thames Aff. ¶ 21.)  Bady also stated that he did not throw any punches at the officers, did not kick the officers, and generally did not resist their attempts to seize him.  Bady alleges that he was face-down on the ground when the officers tased him.

Defendants provide a different account of the events that transpired that evening, much of which is disputed by Bady.  According to Minneapolis Police Officer Charles Peter, he responded to a firefighter or paramedic call for assistance and was the first officer to arrive on the scene.  Peter testified that when he arrived, one of the paramedics told him that Bady had just assaulted a firefighter.  Peter, along with Minneapolis Police Officer Peter Stanton, approached Bady to handcuff him, but Bady pulled his arm away.  It is undisputed that Peter and Stanton then used force on Bady to effect an arrest.  Peter admitted to using knee strikes to get Bady to the ground.  Stanton testified that, during the ensuing struggle, Bady attempted to grab hold of his gun.  Stanton responded by

punching Bady several times. Officer Patricia Nelson also arrived at this time and tried to subdue Bady. Nelson attempted to pull Bady's arms behind his back, but Bady continued to resist by pushing himself off the ground and pulling his arms underneath his body.

Officer Jerry Johnson arrived on the scene and saw the other officers struggling with Bady. According to Johnson, one of the officers yelled "Does anybody have a taser?" (Johnson Dep. at 15-16.) Johnson had a taser and had been trained to use the taser when "empty hand" techniques were not effective to overcome resistance. According to Johnson, he believed the use of a taser was justified, and he tased Bady. Also around this time, Sergeant Ann Murphy-Kjos yelled "taser." Officer Peter moved away from Bady, and Murphy-Kjos tased Bady. Peter then approached Bady to handcuff him, but Bady again pulled away and tried to stand up. Murphy-Kjos tased Bady a second time, at which point Bady allegedly said "I give up." Peter then handcuffed Bady. Johnson and Murphy-Kjos do not dispute that they used a taser on Bady. However, the parties dispute whether Bady was handcuffed before or after Bady was tased.

After Bady was handcuffed, paramedics from North Memorial Hospital attended to him. Bady was placed on a stretcher and was administered an I.V. According to Thames, Bady was unable to move after the incident and had to be transferred to the ambulance in a stretcher. According to Perrell, the paramedics covered up Bady's face with a cloth. Bady was then transported in an ambulance to North Memorial Hospital. The treating physician at North Memorial noted that Bady had a "blunt head trauma" and a puncture wound. The physician also stated his opinion that Bady had been "drinking

heavily." (Norton Aff., Ex. H.) Bady disputes this claim, alleging he had no more than a few sips of an alcoholic beverage prior the incident.

As a result of the officers' use of force, Bady suffered bleeding taser marks on his back, abrasions to his arms, wrists, and elbows, and scratches and cuts on his face. Bady also experiences back, shoulder, and neck pain, nervousness and anxiety, difficulty sleeping, and loss of memory. Bady alleges that he has not sought treatment for his injuries because he does not have health insurance and cannot afford medical care. Bady saw a chiropractor for several months but had to stop because he could not afford it.

Bady brought this § 1983 action against Minneapolis police officers Murphy-Kjos, Johnson, Nelson, Stanton, and Hafstad; Minneapolis police sergeant Charles Peter; Fire Department captain Rita Juran; and John/Jane Does 1-5. Bady alleges that defendants used excessive force in violation of the Fourth Amendment by force-feeding glucose to him, kneeing and striking him, and tasing him multiple times after he had been handcuffed. Bady further alleges that defendants' conduct violated his substantive due process rights. Finally, Bady contends that Juran and other unnamed firefighters committed a battery against him by trying to force-feed glucose to him without his consent.

## ANALYSIS

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXCESSIVE FORCE

The use of force is excessive under the Fourth Amendment if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). When considering the particular circumstances, courts consider factors including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or attempted to evade arrest by flight. *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001). Force that later seems unnecessary does not violate the Fourth Amendment if it was reasonable at the time, giving consideration to the fact that the officer was forced to make a "split-second judgment[]" in a "tense, uncertain, and rapidly evolving" situation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Bady first argues that Juran and other unidentified firefighters used excessive force against him by force-feeding him glucose despite his protestations.[3] Even viewing

---

[3] Although Juran disputes that she or any firefighter force-fed the glucose to Bady, for purposes of this summary judgment motion the Court views the facts in a light most favorable to Bady.

the facts in a light most favorable to plaintiff, however, the record suggests that the firefighters who arrived on the scene reasonably believed Bady was undergoing a potentially life-threatening diabetic episode. Upon arriving at Walton's home, Juran was informed that Bady was diabetic and that he had not taken his diabetes medication that day. Bady appeared visibly disoriented and non-responsive to Juran's questions. His eyes remained closed throughout much of the incident. Based on Juran's experience and medical training, she believed that Bady needed glucose to regulate his blood sugar concentration and to prevent potentially severe injury. The Court finds that, under these circumstances, a firefighter's attempt to administer glucose to a person believed to be undergoing a diabetic emergency is not unreasonable. Moreover, the Court notes that Bady has not alleged any injury, much less a *de minimis* injury, directly resulting from the force-feeding incident, further supporting the conclusion that the firefighters' use of force in this instance was not unreasonable. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2007) (stating that a *de minimis* use of force or injury is insufficient to support a finding of a constitutional violation). The Court therefore grants defendants' motion on Bady's claim that the glucose incident constitutes excessive force.

Bady next alleges that Minneapolis police officers, including Officers Murphy-Kjos, Johnson, Stanton, Nelson, and Peter,[4] used excessive force by kneeing and striking

---

[4] Defendants argue that Bady has been able to identify only Murphy-Kjos and Johnson as officers who used force against him, and that the other officers named in the complaint – Hafstad, Nelson, Peter, and Stanton – should be dismissed from the case. However, the Court's review of the record clearly demonstrates that Nelson, Peter, and Stanton were also involved in the use of force against Bady. The record further shows that Officer Hafstad was present but did not engage in any interaction with Bady, and was instead focused on controlling another person

(Footnote continued on next page.)

Bady, taking him down to the ground, and tasing him multiple times after he had been handcuffed. Defendants argue that their use of force was reasonable under the circumstances, noting that they were responding to a "combative client" call and that at least some of the officers were told when they arrived on the scene that Bady had assaulted a firefighter. Defendants further contend that Bady resisted their attempts to handcuff him, tried to grab Stanton's gun, and refused to go down to the ground, all of which justified their increased use of force, including the use of a taser.

Viewing the facts in a light most favorable to Bady, a jury could reasonably conclude that the use of force by these officers was unreasonable under the circumstances. The record suggests that at the moment the officers arrived on the scene, Bady was undergoing a significant medical emergency, was pacing slowly along the sidewalk, and appeared to be weakened and disoriented. Rather than investigating and inquiring into the circumstances, however, the officers approached Bady and immediately attempted to take him down to the ground. Although assaulting a firefighter is a severe crime, a reasonable officer on the scene observing Bady's behavior may have questioned whether Bady was indeed combative and whether he posed any threat to the officers. *See Ngo v. Storlie*, 495 F.3d 597, 603 (8th Cir. 2007) (finding officer's observations after

---

(Footnote continued.)

present at the scene. Accordingly, the Court finds that Hafstad was not involved in the use of force against Bady and is dismissed from the case. Further, discovery is largely completed in this case, and Bady has identified the primary officers who used force against him. Because it is unlikely that plaintiff will identify any additional defendants through discovery, the Court dismisses the remaining John/Jane Does 1-5 as named defendants in this case. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

arriving on the scene may have diminished the perceived threat posed by a plaintiff who allegedly shot a fellow officer). As such, a jury may reasonably conclude that the officers' immediate use force against Bady to effect an arrest was unreasonable under the circumstances.

Similarly, Bady and Thames both testified that Bady did not resist the officers' attempts to arrest or control him, did not try to grab Stanton's gun, and did not kick or strike the officers. In addition, both Bady and Thames testified that the officers tased Bady multiple times after he was already handcuffed, lying in a prone position face-down on the ground. While the defendants dispute this version of events, the Court finds that a genuine issue of material fact exists as to whether Bady resisted arrest, and whether the officers' use of force, including kneeing and striking Bady and taking him to the ground, was unreasonable under the circumstances. The Court further finds that a jury could reasonably conclude that tasing a non-resistant suspect who is already in handcuffs, lying prone on the ground, constitutes excessive force in the circumstances presented here.[5]

Defendants argue that summary judgment is nonetheless appropriate because Bady suffered only *de minimis* injury from the alleged use of force. The Court disagrees. Bady suffered bleeding taser marks on his back, abrasions to his arms, wrists, and elbows, neck

---

[5] Bady also alleges that Juran and other firefighters and paramedics should be liable under § 1983 for their failure to intervene while the officers used force against him. *See Putnam v. Gerloff*, 639 F.2d 415, 423-24 (8th Cir. 1981). However, Juran was trained as a firefighter and medical responder, and not as a law enforcement officer. *See Cole v. City of Chicago*, No. 06C4704, 2008 WL 68687, at 4-5 (N.D. Ill. Jan. 4, 2008) (dismissing § 1983 failure to intervene claim against paramedic defendants because they were not acting under color of state law when they allegedly failed to intervene). The Court finds that, in these circumstances, Juran and other firefighters are not liable under § 1983 for failing to intervene.

and back problems, as well as general anxiety and sleeping problems. Although Bady initially saw a chiropractor for his back problems, Bady avers that he has not sought additional medical treatment largely because he lacks adequate health insurance. Had Bady sought professional medical care, he likely would be able to claim more significant monetary damages as a result of the use of force. In these circumstances, the Court finds that Bady's injuries are sufficient to support his excessive force claim.

### III.  QUALIFIED IMMUNITY

Defendants argue that even if there is sufficient evidence supporting Bady's excessive force claims, they are entitled to qualified immunity. Qualified immunity is a defense available to government officials who have not violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). The qualified immunity defense "allows officers to make reasonable errors so that they do not always err on the side of caution." *Habiger v. City of Fargo*, 80 F.3d 289, 295-96 (8th Cir. 1996) (internal quotations and citations omitted). The Court conducts a two-step analysis to determine whether qualified immunity is appropriate. The first step is to determine whether the facts alleged, viewed in the light most favorable to plaintiff, show that the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the Court finds a constitutional violation, it then asks whether the right was clearly established. *Id.* As discussed above, Bady has set forth sufficient facts to allow a reasonable jury to conclude that defendants' use of force violated his Fourth Amendment

right to be free from excessive force. Thus, the Court must determine whether Bady's constitutional right was clearly established.

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Crumley*, 324 F.3d at 1007. The salient question is whether the state of the law at the time of the violation gave officers "fair warning" that their alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Taking the facts in a light most favorable to Bady as the Court must, the officers in this case jumped, kneed, and punched a non-resistant suspect who was experiencing a medical emergency, could not breathe, and appeared weak and disoriented. Two officers then tased the non-resistant suspect four times, despite the fact that Bady was handcuffed and lying face down on the ground. The Court finds that a reasonable officer would be on notice that the use of such force on a non-resistant suspect would violate the plaintiff's clearly established constitutional rights. Accordingly, the Court finds that defendants are not entitled to qualified immunity on Bady's excessive force claim. The Court therefore denies defendants' motion for summary judgment on Bady's claim that defendants used excessive force in the course of arresting him.

## IV. DUE PROCESS

Bady also alleges that the defendants' conduct violated his federal due process rights. Specifically, Bady alleges that Juran violated his right to refuse unwanted medical care, that defendants' conduct resulted in a "state-created danger," and that defendants generally engaged in a conspiracy to cover up their conduct. In addition, Bady alleges

defendants failed to properly investigate the incident before using force in arresting him and failed to provide adequate medical care.

The Fourteenth Amendment prohibits "conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, [or is] offensive to human dignity." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc) (internal quotations omitted). It is well established, however, that the Fourth Amendment provides the explicit textual source of constitutional protection against physically intrusive government conduct. *Graham*, 490 U.S. at 395. As such, "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* (emphasis in original).

Here, Bady's § 1983 claim arises from the use of force by both Minneapolis firefighters and police officers, invoking Bady's right to be free from unreasonable seizure under the Fourth Amendment. As such, the Court finds that, with the exception of Bady's conspiracy claim, the alleged due process violations in this case are appropriately subsumed in the Fourth Amendment analysis discussed above, and should not be addressed under the more general substantive due process framework advocated by Bady. *See County of Sacremento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *see also, e.g.*, *Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir.

2003) (analyzing defendant's failure to investigate on the scene before using force as part of plaintiff's Fourth Amendment claim). Accordingly, the Court grants defendants' motion for summary judgment on Bady's due process claims.

Bady also asserts a § 1983 conspiracy claim against defendants, alleging that the officers conspired to cover-up their unconstitutional behavior in violation of Bady's substantive due process rights. To support a § 1983 conspiracy claim, a plaintiff must demonstrate (1) that the defendant conspired with others to deprive him of constitutional rights, (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) that the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff must also demonstrate a deprivation of a constitutional right or privilege in order to prevail on a § 1983 conspiracy claim. *Id.* Even viewing the facts in a light most favorable to Bady, the Court's review of the record reveals no evidence that would allow a reasonable jury to conclude that any of the defendants agreed to cover up the incident, much less that any defendants took an overt act in furtherance of that agreement. The Court therefore grants defendants' motion for summary judgment on Bady's § 1983 conspiracy claim.

**V.    BATTERY**

Finally, Bady alleges that Juran and other firefighters committed a battery by force-feeding the glucose to him. Under Minnesota law, battery is the intentional, unpermitted offensive contact with the person of another. *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980). Consent to the alleged contact is a defense to battery. *See K.A.C. v. Benson*, 527 N.W.2d 553, 561 (Minn. 1995).

"Assuming disclosure sufficient to make such a consent informed, consent may be implied from the conduct of a patient as well as from emergency conditions." *Kohoutek v. Hafner*, 366 N.W. 2d 633, 638 (Minn. Ct. App. 1985), *rev'd on other grounds*, 383 N.W.2d 295 (Minn. 1986).

Defendants argue that Juran was acting in an emergency situation, and that Bady's consent to the administration of the glucose was implied from the nature of the emergency.[6] Juran notes in particular that she had been informed that Bady was diabetic and that he had not taken his diabetes medication that day, that Bady appeared disoriented, had his eyes closed, and was non-responsive to her questions, and that she was concerned that Bady might be experiencing a life-threatening diabetic episode. Bady responds that his resistance to the firefighters would have made his non-consent apparent.

Ultimately, however, the Court need not decide this issue. Even assuming that Bady's consent could not reasonably be implied from his conduct, defendants are immune from Bady's tort claim under the doctrine of official immunity. "The doctrine of official immunity protects public officials from liability for discretionary actions taken in the course of their official duties." *Bailey v. City of St. Paul*, 678 N.W.2d 697, 700 (Minn. Ct. App. 2004). Official immunity exists "to protect public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* (internal quotations omitted). Proof that the official committed a

---

[6] Defendants also deny that they force-fed the glucose to Bady, contending instead that they handed the tube to Bady, and Bady threw the tube to the ground. Viewing the facts in a light most favorable to Bady, however, the Court assumes Bady's version of events is true for purposes of this motion.

willful or malicious wrong can defeat claims of official immunity. *Elwood v. Rice County*, 423 N.W.2d 671, 679 (Minn. 1988). The Court finds that, under the circumstances here, the firefighters' decision to administer a glucose tube to a diabetic patient who appeared to be undergoing a potentially life-threatening diabetic emergency was discretionary in nature. Further, Bady has pointed to no evidence in the record that would allow a reasonable jury to conclude that Juran or other firefighters acted with malice or bad faith, or otherwise knew that what they were doing was wrong, in administering the glucose to Bady. *See Semler v. Klang*, 743 N.W.2d 273, 279 (Minn. Ct. App. 2007) (stating that a finding of malice must be based on specific facts evidencing bad faith). As such, the Court agrees that defendants are entitled to official immunity with respect to Bady's battery claim. The Court therefore grants defendants' motion for summary judgment on Bady's battery claim.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [Docket No. 20] is **GRANTED in part** and **DENIED in part**, as follows:

1. Defendants' Motion for Summary Judgment on all claims asserted against defendants Rita Juran, Peter Hafstad, and John/Jane Does 1–5 is **GRANTED**. Defendants Rita Juran, Peter Hafstad, and John/Jane Does 1–5 are **DISMISSED** from this action.

2. The Clerk of Court is respectfully **DIRECTED** to correct the court caption by adding Peter Stanton as a named defendant.

3. Defendants' Motion for Summary Judgment on plaintiff's excessive force claim against defendants Ann Murphy-Kjos, Jerry Johnson, Patricia Nelson, Charles Peter, and Peter Stanton is **DENIED**.

4. Defendants' Motion for Summary Judgment on plaintiff's due process claims against all defendants is **GRANTED**.

5. Defendants' Motion for Summary Judgment on plaintiff's battery claim is **GRANTED**.


DATED: August 7, 2008　　　　　　　　　　　s/ John R. Tunheim\_
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge