**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| KENNETH BADY, | Civil No. 06-2254 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR JUGDMENT AS A MATTER, A NEW TRIAL OF LAW, AND TO AMEND THE JUDGMENT** |
| OFFICERS ANN MURPHY-KJOS, JERRY JOHNSON, PATRICIA NELSON, PETER HAFSTAD, PETER STANTON, and SGT. CHARLES PETER, | |
| Defendants. | |

---

Jill Clark, **JILL CLARK, PA**, 2005 Aquila Avenue North, Golden Valley, MN 55427, for plaintiff.

C. Lynne Fundingsland and Sara J. Lathrop, Assistant City Attorneys, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 333 South Seventh Street, Suite 300, Minneapolis, MN 55402-2453, for defendants.

This case is before the Court on plaintiff Kenneth Bady's post-trial motions after a jury found that defendants, Minneapolis police officers Ann Murphy-Kjos, Jerry Johnson, Patricia Nelson, Peter Stanton, and Sergeant Charles Peter (collectively, "defendants"), were not liable under federal law for using excessive force to seize Bady after an incident at Bady's friend's home. For the reasons discussed below, the Court denies Bady's motions for judgment as a matter of law and for a new trial.

## BACKGROUND

Bady brought this action against defendants, all members of the Minneapolis Police Department, under 42 U.S.C. § 1983, alleging that defendants used excessive force in seizing Bady during an incident at his friend's home.[1]

On February 24, 2006, Bady was at his friend Sheila Perrell's house, where Sheila Perrell, Perrell's son, and Robert Thames were present. Bady suffers from diabetes and it is undisputed that Bady had not taken his diabetes medication that day. At some point during the visit, Bady began experiencing chest pain and having difficulty breathing. A short time later, Perrell called 911 and indicated to the 911 operator that Bady may be having a heart attack.

When first responders arrived, including firefighter Rita Juran, Bady was standing outside on the porch. Firefighters helped Bady inside and began to assess his condition. Firefighters attempted to give Bady a tube of glucose to combat the effects of what appeared to be complications from Bady's diabetes. At trial, Bady offered testimony that the firefighters attempted to force-feed him glucose, although defendants offered testimony to the contrary. Bady stated that he needed some air and pushed through firefighters to get outside. At trial, the parties disputed the facts relating to Bady's forcefulness in leaving the firefighters. It was undisputed, however, that firefighters called for police back-up, and indicated that they were dealing with a "combative client."

---

[1] Officer Peter Hafstad was dismissed from this case after the Court granted defendant's motion for summary judgment on claims against him. (Order, Docket No. 45, at 17.) Further, Bady initially brought claims against firefighter Rita Juran and John/Jane Does 1-5, which the Court also dismissed. (*Id.* at 18.)

Bady and defendants offer differing accounts of what transpired after the Minneapolis police officers arrived on the scene. At trial, Bady introduced the testimony of witnesses Perrell, Thames, and Margaret Freeman, who were at Perrell's home when the incident occurred. Perrell testified that when police arrived, Bady was walking on the sidewalk in front of Perrell's house. Thames testified that six to eight squad cars arrived simultaneously in front of Perrell's house, with most of the cars containing two police officers. According to Thames, several officers came up from behind Bady, without investigating the circumstances and without provocation, and grabbed him, wrapping their arms around Bady's shoulders and essentially jumping on him. Bady's witnesses testified that to arrest Bady, the police officers kneed him in the leg, struck him with a closed fist multiple times, and otherwise used extensive force to subdue Bady and pull him to the ground. Thames also testified that after Bady was brought to the ground and handcuffed, the police officers tased him multiple times.

Testimony from Minneapolis police officers, including defendants, however, conflicted with Bady's witnesses' accounts of the incident. According to the testimony of Minneapolis Police Sergeant Charles Peter, he responded to a firefighter or paramedic call for assistance and was one of the first officers to arrive on the scene. Sgt. Peter testified that when he arrived, one of the paramedics told him that Bady had just assaulted a firefighter. Sgt. Peter also testified that he did not conduct further investigation into the assault, but sought to place Bady under arrest and handcuff him first. Sgt. Peter, along with Minneapolis Police Officers Peter Stanton and Shawn Brandt, approached Bady to handcuff him, stating that he was under arrest. According to the officers' testimony,

Bady pulled his arm away. It is undisputed that the officers then used force to seize Bady, including kneeing Bady, striking him with closed fists, and taking him to the ground. Officer Stanton testified that during the ensuing struggle he felt and saw Bady grab hold of his gun in his gun holster. Officer Stanton responded by punching Bady several times. Officer Patricia Nelson also arrived at this time and tried to subdue Bady. Officer Nelson attempted to pull Bady's arms behind his back, but testified that Bady continued to resist by pushing himself off the ground and pulling his arms underneath his body. The officers testified that they tased Bady in an effort to control him, but only did so before he was handcuffed.

After Bady was handcuffed, paramedics from North Memorial Hospital attended to him. Bady was placed on a stretcher and was administered an I.V. According to Thames, Bady was unable to move after the incident and had to be transferred to the ambulance in a stretcher. Bady was then transported in an ambulance to North Memorial Hospital.

Bady did not move for judgment as a matter of law at the close of his case, at the close of all of the evidence, or at any time during the trial. On December 22, 2008, after a five-day trial, the jury returned a verdict in favor of defendants, finding that defendants did not use excessive force in seizing Bady. Bady now moves for judgment as a matter of law, to alter the judgment, or, in the alternative, for a new trial.

# DISCUSSION

## I. MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50

Bady moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), which states:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment – and may alternatively request a new trial or join a motion for a new trial under Rule 59.

Under Rule 50, judgment as a matter of law is appropriate if no reasonable juror could have returned a verdict for the nonmoving party. *Weber v. Strippit, Inc.*, 186 F.3d 907, 912 (8th Cir. 1999). In analyzing a Rule 50 motion, the Court must consider the evidence in the light most favorable to the nonmovant, resolve all factual conflicts in the nonmovant's favor, and give the nonmovant the benefit of all reasonable inferences. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1002 (8th Cir. 2000). "Judgment as a matter of law is appropriate when the record contains no proof beyond speculation to support the verdict." *Heating & Air Specialists v. Jones*, 180 F.3d 923, 932 (8th Cir. 1999).

It is well-settled in the Eighth Circuit, however, that "[a] motion for judgment as a matter of law under Fed. R. Civ. P. 50[(b)] **requires** that the moving party make [an initial Rule 50(a)] motion prior to the time the case goes to the jury." *Douglas Cty. Bank & Trust Co. v. United Financial, Inc.*, 207 F.3d 473, 477 (8th Cir. 2000). Although Bady did not move for judgment as a matter of law at the close of his own case, at the close of all of the evidence, or at any time during the trial, Bady maintains that he is entitled to

move for judgment as a matter of law after the jury rendered its verdict. Specifically, Bady contends that "[e]ven when no 50(a) motion was made, JAML is warranted when the verdict constitutes plain error, and miscarriage of justice would result if the verdict remained in effect." (Mem. in Supp., Docket No. 98 at 2.)

Bady, however, mischaracterizes the law under Rule 50(b).[2] Although the Eighth Circuit has noted some exceptions to the general rule that would permit a court to review a 50(b) motion on its merits without a Rule 50(a) motion at the close of all evidence, none of those exceptions apply here. Those exceptions may apply (1) when a movant properly raised a 50(a) motion prior to the close of evidence and the court indicated that the movant need not renew its motion under 50(b) to "preserve its right to challenge the verdict"; (2) if no new evidence is presented after the initial motion and there is a "tacit understanding" that the movant need not renew its motion; and (3) if there is only a short time lapse in between the original motion and the close of evidence, where the movant fails to renew the motion pursuant to Rule 50(b). *Douglas Cty. Bank & Trust Co.*, 207 F.3d at 477. As noted by the Eighth Circuit in *Douglas County Bank & Trust*, and as is applicable here:

> In all of the listed exceptions, the movant made some type of motion for judgment as a matter of law before the case went to the jury. [The movant here] made its motion for judgment as a matter of law after the jury returned with a verdict. Therefore, none of the listed exceptions apply nor should a new exception be crafted in this case. Permitting movants for any reason to make an initial motion for judgment as a matter of law after the

---

[2] Bady cites *Conseco Fin. Servicing Corp. v. N. Am. Mortgage Corp.*, 381 F.3d 811 (8th Cir. 2004), but *Conseco* does not support his argument. Instead, the Eighth Circuit explicitly stated in *Conseco* that "a post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Id.* at 821 (internal quotation marks omitted).

return of the jury verdict deprives the nonmoving party the opportunity to cure the deficiency in their case, if any exists. Allowing the motion to go forward would set an unacceptable precedent.

*Id.* at 478; *accord Mathieu v. Gopher News Co.*, 273 F.3d 769, 775 (8th Cir. 2001).

Bady counters that permitting his 50(b) motion here would not "disturb" the policy under Rule 50(a), asserting that defendants were not prejudiced by not having the opportunity to cure deficiencies in their case because they "rested [their case], knowing all of the evidence that [Bady] had already put on." (Mem. in Supp., Docket No. 98, at 4.) That assertion, however, would be true in all cases in which a defendant rested its case in a jury trial, and the Eighth Circuit has not deemed such reasoning to be persuasive enough to carve out an additional exception to the general rule. In addition, it is axiomatic that a **renewed** motion for judgment as a matter of law under Rule 50(b) must **renew** a previous motion for judgment as a matter of law. In sum, the Court is not persuaded that a new exception to the general rule is appropriate here.

Accordingly, Bady's motion for judgment as a matter of law and alternative motion for a new trial, as brought under Rule 50(b), are denied.[3] *See generally* Fed. R. Civ. P. 50(b) ("No later than 10 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.").

---

[3] Although the Court does not address the substance of Bady's judgment of a matter of law arguments above, Bady incorporates those arguments in moving for a new trial or modification of the judgment under Rule 59, discussed more fully below.

## II. MOTION FOR A NEW TRIAL OR TO MODIFY OR AMEND THE JUDGMENT

Bady also moves for a new trial or to amend the judgment under Rule 59. Under Rule 59(a), the Court may grant a motion for a new trial on all issues or on particular issues if the Court "believe[s] . . . that the verdict was so contrary to the evidence as to amount to a miscarriage of justice." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). Even where the court has made evidentiary errors, a new trial is only warranted "when the cumulative effect of the errors is to substantially influence the jury's verdict." *Williams v. Kansas City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000). Further, Rule 59(e) allows for correction of "manifest errors of law or fact or to present newly discovered evidence," but cannot be used to introduce new evidence or raise arguments that could have been offered or raised prior to entry of judgment. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black*, 141 F.3d 1284, 1286 (8th Cir. 1998).

At trial, the jury was required to determine whether defendants used excessive force to apprehend Bady in violation of the Fourth Amendment of the United States Constitution. An officer's use of force is excessive under the Fourth Amendment if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). When considering the particular circumstances, courts consider factors including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively resisted arrest or attempted to evade arrest by flight. *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001). Force that later seems unnecessary does not violate the Fourth Amendment if it was reasonable at the time, giving consideration to the

fact that the officer was forced to make a "split-second judgment[]" in a "tense, uncertain, and rapidly evolving" situation. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Bady argues that he is entitled to a new trial or to entry of judgment on the issue of liability because (1) defendants improperly injected racism into the trial; (2) the Court improperly instructed the jury on objectively reasonable force; (3) the Court improperly permitted hearsay testimony from Sgt. Peter that when he arrived on the scene, he heard from an unidentified paramedic that a firefighter had been assaulted; (4) the Court improperly permitted defendants to introduce subjective evidence of defendants' intent during the altercation with Bady; and (5) the verdict is so contrary to the evidence as to result in a miscarriage of justice.

### A.     Injection of Racism and Criminality into the trial

Bady asserts that defendants improperly "manipulated the trial to invoke juror racism and distrust of black men," in part by "intimat[ing] Bady was [violent], intimat[ing] he was a criminal." (Mem. in Supp., Docket No. 98 at 4-5.). Bady points to the testimony of Officers Stanton and Nelson in support of this argument.

At trial, Bady objected to Officer Stanton's testimony that in his "directed patrol" work assignment, neighbors "communicated concerns to the [Minneapolis Police Department]." (*Id.*) Bady claims that the purpose of this testimony was to invoke concern by the jury about the stereotypical "North Minneapolis" neighborhoods. The Court overruled that objection at trial. A review of the record confirms that the Court's ruling was appropriate. When defense counsel questioned Officer Stanton about whether he received input from the neighborhood regarding potential criminal activity in his

assigned precinct, Officer Stanton responded generally about his "directed patrol" duties, testifying that watch groups or other citizens could e-mail police officers with concerns about a specific area or address. Officer Stanton did not specifically mention types of activity, regions of the precinct, or the individuals or groups that were commonly reported or investigated. Under those circumstances, the Court is unable to decipher any indication of prejudice or racism in Officer Stanton's testimony, and accordingly finds no error in admitting it.

Bady also contends that Officer Nelson improperly testified that police officers on the scene determined that Bady had committed a "felony-level" assault of a first responder, claiming that such testimony implied that Bady was a criminal. The Court, however, finds nothing improper about Officer Nelson's testimony. Bady questioned Officer Nelson and other defendants about why they did not take formal statements from witnesses at the scene. Officer Nelson merely testified that she did not complete full question-and-answer reports with witnesses because she did not believe she had a responsibility to collect written statements if the activity was more serious than a misdemeanor. That responsibility, she testified, belonged to specific investigative units who could also record the statements. The Court also notes that the jury was responsible for determining whether police officers used reasonable force in apprehending Bady; Officer Nelson's mere reference to her personal opinion about whether Bady's actions constituted a felony or misdemeanor would not substantially influence the jury in this context.

Finally, Bady argues that defense counsel improperly permitted a videotaped deposition of firefighter Shana Dooly to introduce testimony that one of the paramedics was pregnant. Bady contends that action violated the Court's Order prior to trial that excluded reference to the paramedic's pregnancy at trial. Bady, however, did not object to the testimony at trial even though he had a copy of the transcript of the videotaped deposition before it was played and was aware that portions of the videotaped testimony would be offered in open court.

If evidence is introduced at trial without objection, the Court's reviews for plain error. *Spencer v. Young*, 495 F.3d 945, 949 (8th Cir. 2007). "Plain error review is narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings. The verdict should be reversed only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *Chem-Trend, Inc. v. Newport Indus., Inc.*, 279 F.3d 625, 629 (8th Cir. 2002). Here, the Court is not persuaded that the single mention of a paramedic's pregnancy in videotaped testimony seriously affected the fairness of the trial.

### B.  Model Jury Instruction is Improperly Given

Bady further argues that the Court improperly instructed the jury regarding defendants' use of force. At trial, the Court instructed the jury based on the Eighth Circuit's model jury instructions on use of force:

> In determining whether such force was "not reasonably necessary," you must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether a reasonable officer on the scene, without the benefit of 20/20 hindsight, would have used such force under similar circumstances. You must consider that police officers are often forced to make judgments about the amount of force that is necessary in circumstances that are tense, uncertain, and rapidly evolving. You must consider whether the officer's actions are reasonable in the light of the facts and circumstances confronting the officer, without regard to the officer's own state of mind, intention, or motivation.

(Court's Jury Instructions, Docket No. 89, at 11-15 (quoting *Eighth Circuit Manual of Model Jury Instructions: Civil*, § 4.10).)

Bady argues that the instruction that police are often required to make decisions in "rapidly evolving" circumstances, "requires juries to favor police—to give them the benefit of the doubt." (Mem. in Supp., Docket No. 98, at 6.) Further, Bady contends that the model instruction should permit a district court to omit the "rapidly evolving" portion of the instruction or to add a clause that "police cannot turn a blind eye" to evidence of Bady's innocence. (*Id.*)

"A district court has considerable discretion in charging the jury." *Fleming v. Harris*, 39 F.3d 905, 907 (8th Cir. 1994). "The district court need not give every proposed instruction as long as the court adequately presents the law and the issues to the jury." *Id.*; *see also Grain Land Coop v. Kar Kar Farms, Inc.*, 199 F.3d 983, 995 (8th Cir. 1999) (holding that an appellate court's deferential review of jury instructions is limited to whether the instructions, in light of the evidence presented and the applicable law, "fairly and adequately submitted the issues in the case to the jury" (internal quotation marks omitted)). "In considering the failure of a district court to give a requested

instruction, the omission is error only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." *Wood v. President & Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1221 (11th Cir. 1992).

As an initial matter, the Court repeated, verbatim, the language from the Eighth Circuit's model jury instruction entitled "Excessive Use of Force – Arrest or Other Seizure of Person – Before Confinement – Fourth Amendment." *Eighth Circuit Manual of Model Jury Instructions: Civil*, § 4.10. Although that fact, alone, is not dispositive to the appropriateness of the instruction, *see United States v. Norton*, 846 F.2d 521, 525 (8th Cir. 1988) ("The Model Instructions . . . are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts."), the Court finds that the model jury instruction here is well-supported by law and is appropriate given the evidence introduced at trial.

Bady offers no support for his argument – and the Court finds no support in the Eighth Circuit law – that use of the term "rapidly evolving" in the jury instructions is a "finger on the scale of justice." Indeed, the United States Supreme Court specifically held that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The Court notes that the Eighth Circuit has expressed some concern about whether a clause involving the "rapidly evolving" language may be repetitive in light of the

previous sentence in the instruction.[4] *Billingsley v. City of Omaha*, 277 F.3d 990, 996-97 (8th Cir. 2002). Ultimately, however, the Eighth Circuit held that the district court did not err in including this instruction because "whether additional comment is required as to the circumstances in which the officer is operating in beyond the factors set forth in *Garner* and *Graham* is a matter that lies within the discretion of the district court." *Id.*, at 996.

Here, the Court concludes that the relatively short timeline in the case merited the additional instruction and that the comment was therefore not "superfluous" in light of the language that precedes it. *See id.* In sum, the jury was properly instructed regarding excessive force under § 1983 and the failure to include the language that police "cannot turn a blind eye" was insufficient to cause Bady prejudice.

### C. Motions *in limine*

Bady also contends that the Court erred in denying two pretrial motions *in limine*. First, Bady argues that Sgt. Peter should not have been permitted to testify that when he arrived on the scene, he was informed by a paramedic that Bady had assaulted a firefighter. Bady contends that such testimony was inadmissible hearsay and that he was damaged because the unidentified declarant was unavailable for cross-examination.

---

[4] Indeed, Bady does not now and did not previously contend that the "rapidly evolving" instruction was in error because it was repetitious. Instead, Bady argued that the instruction was inappropriate because the arrest was unlawful, and therefore no force was necessary. As noted, *infra*, the Court addressed that concern in the instruction by replacing the word "arrest" with the word "detain."

"The hearsay evidentiary rule excludes out-of-court assertions used to prove the truth of the facts asserted in them." *ACTONet, Ltd. v. Allou Health & Beauty Care*, 219 F.3d 836, 846 (8th Cir. 2000) (internal quotation marks omitted); *see also Fed. R. Evid.* 802. However, Sgt. Peter's testimony was not elicited to establish that Bady had assaulted a firefighter; that is, the testimony was not offered to prove the truth of the matter asserted. Rather, that testimony was elicited to establish the totality of the circumstances relevant to determining whether the force used in seizing Bady was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Sgt. Peter's testimony was sufficiently probative of that issue because it helped establish the circumstances surrounding Bady's detention and was therefore admissible.

Bady further argues that the Court should have excluded Officer Stanton's testimony that he thought Bady was grabbing his gun during the struggle. Bady argues that Officer Stanton's underlying intent or motivation is irrelevant to a question of objective reasonableness. *Graham*, 490 U.S. at 397 ("As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (internal quotation marks omitted)). The Court agrees that an officer's intentions, "good" or "evil," are irrelevant in evaluating objective reasonableness under the Fourth Amendment. *See Graham*, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force;

nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

The Court disagrees, however, that Officer Stanton's testimony merely sought to establish his intent. Rather, Officer Stanton testified that he **felt and saw** Bady's hand on his gun and that he struck Bady in an effort to force Bady to release his hold on the gun holster. In other words, that evidence helped to establish Officer Stanton's understanding of the circumstances that he was facing and is accordingly both relevant and admissible. Thus, the Court did not err admitting it.

### D. Sgt. Peter's Testimony

Bady also contends that a new trial is warranted given the testimony of Sgt. Peter, which Bady claims established that no use of force was necessary under the circumstances. Bady asserts Sgt. Peter's testimony supports the conclusion that Sgt. Peter arrived at a calm scene, that Bady was standing on the sidewalk, that there was no requirement to arrest Bady, and therefore any use of force to apprehend Bady was excessive. As a consequence, Bady argues that the evidence could only support a verdict in Bady's favor.

The Court disagrees. Sgt. Peter testified that when he arrived on the scene, he was informed that a paramedic had been assaulted. Sgt. Peter also testified that he decided to detain Bady at that point, and Sgt. Peter and other Minneapolis police officers testified that Bady attempted to resist that seizure. Although Bady introduced testimony that he was not combative and did not resist the police officers, defendants' testimony strongly contradicted that evidence.

As noted in the context of a motion for judgment as a matter of law, it is not the Court's province to resolve evidentiary conflicts or to determine witness credibility. *See Lavender v. Kurn*, 327 U.S. 645, 652-53 (1946) ("[I]t would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury."). Here, it was the jury's task to determine whether the force defendants used to detain Bady was reasonably necessary under the circumstances. Given the testimony offered at trial, the Court cannot find that the jury's "verdict was so contrary to the evidence as to amount to a miscarriage of justice." *French*, 83 F.3d at 944. Accordingly, Bady's motion for a new trial is denied.

Bady's motion to alter or modify the judgment under Rule 59(e) is also denied as Bady has not demonstrated that the Court made "manifest errors of law or fact," nor has he presented "newly discovered evidence" justifying modification.

## ORDER

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's Motion to Alter Judgment, Motion for Judgment as a Matter of Law, or Motion for a New Trial [Docket No. 97] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2009  ___s/ John R. Tunheim___
at Minneapolis, Minnesota.           JOHN R. TUNHEIM
                                  United States District Judge